UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Finance Investments Overseas Holding Corp.,<br><br>      Plaintiff,<br> -against-<br><br>Paradigm Credit Corp., d/b/a Paradigm Capital Group, David Kushner, Jeffrey Meshel, and Wayne Sturman,<br>      Defendants. | Docket No.: _____<br><br>**Complaint** |

Finance Investments Overseas Holding Corp. ("Plaintiff" or "Finance Investments") by and through its attorneys, Woods Lonergan & Read PLLC, as and for its Verified Complaint against Paradigm Credit Corp., d/b/a Paradigm Capital Group ("Paradigm"), David Kushner, Jeffrey Meshel, and Wayne Sturman (together, "Principals") (collectively, "Defendants"), upon knowledge as to its own conduct and upon information and belief as to the conduct of others, alleges as follows:

**NATURE OF THE ACTION**

1. This is an action against Paradigm and its Principals for damages arising from breach of contract, including the implied covenant of good faith and fair dealing, made by and between Defendants and Finance Investments, dated February 27, 2014 (the "Contract"), which resolved the action: *Finance Investments Overseas Holding Corp. v. Paradigm Credit Corp., d/b/a Paradigm Capital Group, et al.*, Civ. No. 12 CV 8380 (CM) (the "Federal Action").

2. Finance Investments also lays claim against Defendants for damages arising from Defendants' breach of their fiduciary duties to Finance Investment resulting from their acts and omissions committed after the execution of the Contract, which acts and omissions occurring after the Contract's execution are not released under the terms of the Contract.

1

## PARTIES

3. Plaintiff Finance Investments Overseas Holding Corp. is a foreign corporation doing business in Tortola, British Virgin Islands.

4. Upon information and belief, Defendant Paradigm Credit Corp. d/b/a Paradigm Capital Group is a domestic corporation doing business at 380 Lexington Avenue, Suite 2020, New York, New York 10168.

5. Upon information and belief, Defendant David M. Kushner ("Kushner") is a natural person residing in the State of New York and is an officer or director of Paradigm.

6. Upon information and belief, Defendant Jeffrey Meshel ("Meshel") is a natural person residing in the State of New York and is an officer or director of Paradigm.

7. Upon information and belief, Defendant Wayne Sturman ("Sturman") is a natural person residing in the State of New York and is an officer or director of Paradigm.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00 exclusive of interests and costs, and there is complete diversity between the parties, as Defendants are citizens of New York and Plaintiff is a citizen of the British Virgin Islands.

9. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and/or (3) because Defendants are residents of New York and/or because Defendants are subject to the Court's personal jurisdiction with respect to this action.

## STATEMENT OF FACTS

*The Federal Action*

10. The Federal Action, commenced in November of 2012, concerned Finance

Investment's recovery of damages arising from the alleged misconduct of Paradigm and its Principals in connection with four commercial loan agreements in which Finance Investments was a participant.

11. Specifically, Finance Investments (among other, unknown lenders) purchased participation interests in four commercial loans on a percentage or fractional basis, whereby Finance Investments' ownership interest in loans was the proportionate amount of its investment to the entire loan on any given property.

12. Paradigm was the Lead Lender on these loans, although, it is understood that Paradigm had no ownership interest in these loans by actually contributing capital as loan participants.

13. The four participation agreements covered loans to properties in: (i) Hoboken New Jersey, (ii) Brooklyn New York, (iii) Elizabeth New Jersey, and (iv) Fort Lauderdale Florida.

14. The participation agreements entitled Finance Investments to a participation interest in the loans. The participation agreements vested a fractional interest of the actual loan in Finance Investments, with the actual recorded mortgage interest in Paradigm's name.

15. Paradigm lent funds from the participation agreements to the owners of the properties as the Lead Lenders though, again, Paradigm did not actually lend or fund any monies itself, and neither did its Principals.

16. The participation agreements gave exclusive and unfettered control over the funds provided by loan participants to Paradigm and its Principals who, under the participation agreements, were to act as fiduciaries with respect to the loans. The participants, like Finance Investments, were kept from directly participating in any of the decisions relating to the loans.

17. Finance Investments had no recorded collateral or security interest in any mortgage,

property or company demonstrating their respective interests, only the internal unrecorded participation agreements.

18. By the time of the Federal Action, the borrowers on the four loans had defaulted.

19. The Fort Lauderdale loan had been foreclosed and the underlying real estate promptly sold as its value yet exceeded its loan. Finance Investments had an approximate 20% interest in the Fort Lauderdale loan pursuant to the participation agreements, representing an approximate $2,400,000.00 investment. Finance Investments alleged certain misconduct in the procurement of the Fort Lauderdale sale giving rise to approximately $1,337,000.00 in damages.

20. As to the remaining loans, the Federal Action generally alleged that Paradigm and its Principals had no incentive to foreclose and sell the remaining three properties in Brooklyn New York, Elizabeth New Jersey, and Hoboken New Jersey because Paradigm and its Principals received income from <u>not</u> foreclosing and selling the properties.

21. The loans governing these properties gave Paradigm (and its Principals) a one-half or 50% share of all default interest accrued on the commercial loans, which meant, that if Paradigm and its Principals sold the properties, they would not earn further compensation.

22. Finance Investments alleged a major conflict of interest as between Paradigm, its Principals, and Finance Investments – namely, that in light of then significant depreciation of real estate valuations, it would be in the best interest of Paradigm and its Principals to delay the eventual sale of the properties until market conditions improve (and to collect default interest in the meantime), whereas it would be in Finance Investments' best interest to foreclose and sell the properties as soon as possible to ensure recovery of as much of its loan as possible.

23. The Hoboken New Jersey property was acquired by a Paradigm affiliate through a Sheriff's Sale and leased, in violation of the participation agreements and in violation of Finance

Investment's best interest, which was to liquidate the property at the fair market value and return Finance Investments' capital (approximately $1,500,000.00 representing a 9.38% interest in the total loan) back to Finance Investments. Finance Investment sought damages and appointment of a receiver.

24.     Finance Investments had a 12.86% total interest in the loan for the Elizabeth New Jersey property, representing approximately $1,800,000.00 worth of capital contribution towards the loan.  Finance Investments alleged damages arising from Paradigm's and its Principals' failure to sell the Elizabeth New Jersey Property in a timely manner, allowing taxes to accrue on the property more than $1,000,000.00 at an 18% penalty interest rate.  Finance Investments sought damages and the appointment of a receiver.

25.     As to the Brooklyn New York property, Paradigm acquired effective control over that property at the time of its foreclosure sale (similar to the Hoboken New Jersey property). Finance Investments held an approximate 8.7% interest in the Brooklyn loan, representing approximately $500,000.00. Finance Investments sought damages and the appointment of a receiver.

*The Settlement Agreement*

26.     On or about February 27, 2014, Paradigm, its Principals, and Finance Investments executed the Contract settling the Federal Action.

27.     Pursuant to the Contract, Finance Investments released and discharged Paradigm and its Principals from liability as to "any actual or alleged act, statement, omission, transaction, or practice, <u>occurring on or before</u> the date of [its] execution[,]" and no party released any rights to pursue enforcement of the terms of the Contract.

5

28. Additionally, Paradigm and its Principals had affirmative obligations under the terms of the Contract, specifically, paragraph 16 thereof, which provides:

> It is expressly agreed to by the parties, that [Finance Investments], through its principal, Andre Dunin, or his son, Ricardo Dunin, is authorized to contact and communicate with the broker retained by the Defendant Paradigm with regard to the sale of the Hoboken and Elizabeth properties to discuss the status and progress of the transactions. While Defendants retain decision making authority with regard to the marketing and sale of these properties and the terms thereof, [Finance Investments] will have the opportunity to consult with Defendants as to the material decisions in connection with the sale of the properties, and Defendants shall keep [Finance Investments] advised of the status of the transactions with regard to material events; and Defendants will promptly provide [Finance Investments] with pertinent information, including copies of any documents pertaining to any offers, counter-offers or proposals to purchase the Hoboken and/or Elizabeth properties.

29. Finally, the parties expressly agreed in the Contract that "the terms and conditions set forth [t]herein, and all negotiations, discussions and communications relating to the settlement of [the Federal Action], shall be held in strict confidence and shall not be disclosed, revealed or communicated to any person or entity whatsoever, except: … (iii) to enforce the terms [t]hereof[.]" This action has been commenced, *inter alia*, pursuant to the express terms of the Contract, paragraph 16, *supra*.

### *Defendants' Misconduct After Executing The Settlement Agreement*

30. After the parties executed the Contract and discontinued the Federal Action, Paradigm and its Principals continued to be fiduciaries to Finance Investments regarding its interests in the Elizabeth New Jersey and Hoboken New Jersey investments.

31. After the parties executed the Contract and discontinued the Federal Action, Paradigm and its Principals had affirmative obligations to Finance Investments concerning these properties pursuant to the express terms of the Contract quoted above.

32. After the parties executed the Contract and discontinued the Federal Action, Paradigm and its Principals continued to engage in acts and omissions that breached their

continued fiduciary duties as well as their obligations under the Contract, and both with respect to Finance Investments' interest in the Elizabeth New Jersey property loan.

33. Specifically, after the disposition of the Federal Action, Defendants made no bona fide or good-faith attempt to sell the New Jersey property, although upon information and belief, several offers were received. Instead, in or around 2016, the Defendants allowed the Elizabeth New Jersey property to become lost in a foreclosure action by the holder(s) of the tax lien(s) on the property. At no time did Paradigm and its Principals advise Finance Investments of that foreclosure proceeding. As a result, Finance Investments has lost its 12.86% interest in the loan, representing approximately $1.8 million.

34. As a direct and proximate result of these breaches, Finance Investments has lost its 12.86% interest in the loan for the Elizabeth New Jersey property, representing approximately $1,800,000.00 in compensatory damages.

35. Moreover, although Paradigm and its Principals sold the Hoboken New Jersey property and rendered payment to Finance Investments thereafter, upon information and belief, Finance Investments did not receive full payment on its participation percentage in the loan, and did not receive full payment on its interest due in connection with its participation percentage in the loan.

36. Although demand has been made, Finance Investments has not received a full accounting as to the Elizabeth and Hoboken New Jersey properties and loans, to which Finance Investments is entitled.

## COUNT I
## BREACH OF FIDUCIARY DUTY

37. Plaintiff repeats and realleges all the foregoing paragraphs as though fully set forth herein.

38. Under the operative Participation Agreements for the Elizabeth New Jersey property loan, Defendants were to act in a fiduciary capacity for Finance Investments in the servicing and administration of Finance Investments' loan.

39. Finance Investments' loan was in the amount of one million eight hundred thousand dollars ($1,800,000.00), representing 12.86% of the entire loan.

40. Defendants had a fiduciary duty to Finance Investments with respect to its fractional interest to sell the Elizabeth New Jersey property and to return to Finance Investments its $1.8 million.

41. Defendants would not receive any direct financial benefit to them from selling the Elizabeth New Jersey property because Defendants, although termed "Lead Lenders," lent no monies to the Elizabeth New Jersey property loan, as Finance Investments did.

42. Contrary to Finance Investments, Defendants received revenue from the default interest rate on the loan and would receive further revenue if Defendants kept and developed the property.

43. Finance Investments lent $1.8 million in order to be repaid its principal loan with interest.

44. From the time of the resolution of the Federal Action in February 2014 and continuing to present, Defendants have acted contrary to the best interests of Finance Investments in failing to sell the Elizabeth New Jersey property.

45. Even if the Elizabeth New Jersey property had been sold at fire-sale rate, such a sale would have been more aligned with the interests of Finance Investments than allowing it to be foreclosed upon for a fraction of that discounted value.

46. Upon information and belief, the holder(s) of the tax lien(s) that ultimately


Case 1:17-cv-04523-ER   Document 1   Filed 06/15/17   Page 9 of 12

foreclosed on the Elizabeth New Jersey property held a monetary value against the property that is *de minimis* when compared to Finance Investments' $1.8 million loan contribution.

47. Simply put, Defendants had no interest in selling the Elizabeth New Jersey property and recovering Finance Investments' loan. Their course of conduct since the resolution of the Federal Action makes this evident.

48. As a direct and proximate result of Defendants breach of their fiduciary duties to Finance Investments in servicing and administering its loan, Finance Investments has sustained damages in the amount $1.8 million, plus prejudgment interest at the annual rate of 9% pursuant to CPLR § 5001.

## COUNT II
## BREACH OF CONTRACT

49. Plaintiff repeats and realleges all the foregoing paragraphs as though fully set forth herein.

50. As part of the settlement between Finance Investments and Defendants, the Contract required Defendants: (i) to act in good faith in the marketing and sale of the Elizabeth New Jersey property, (ii) to keep Finance Investments advised of all material events affecting its interest in the Elizabeth New Jersey property, (iii) to promptly provide Finance Investments with all pertinent documents concerning the Elizabeth New Jersey property, and (iv) to allow consultation with Finance Investments as to the disposition of the Elizabeth New Jersey property.

51. From the time of the discontinuance of the Federal Action in February 2014 and continuing to present, Paradigm and its Principals: (i) deprived Finance Investments of any meaningful consultation as to the disposition of the Elizabeth New Jersey property, (ii) failed to keep Finance Investments advised of the status of the transactions with regard to material events concerning the disposition of the Elisabeth New Jersey property, (iii) failed to promptly provide

Finance Investments with pertinent information, including copies of any documents pertaining to any offers, counter-offers or proposals to purchase the Elizabeth property, (iv) failed to adequately market the sale of the Elizabeth New Jersey property in good faith, (v) failed to actually sell the Elizabeth New Jersey property, and (vi) allowed the Elizabeth New Jersey property to become lost in a foreclosure action without giving any notice to Finance Investments.

52. Due to the foregoing breaches, Finance Investments was unable to take any actions to protect its fractional interest in the Elizabeth New Jersey loan (*e.g.*, purchasing the tax lien(s) on the property).

53. Due to the foregoing breaches, the Elizabeth New Jersey property was lost in the foreclosure action, and Finance Investments' fractional unrecorded interest in the loan for that property was extinguished as a result.

54. But for Defendants' bad faith and breaches of the Contract, Finance Investments would not have sustained the loss of its 12.86% interest in the Elizabeth New Jersey loan.

55. Finance Investments' loan was in the amount of one million eight hundred thousand dollars ($1,800,000.00), representing 12.86% of the entire loan.

56. As a direct and proximate result of Defendants breach of the Contract, specifically, paragraph 16 thereof, Finance Investments has sustained damages in the amount $1.8 million, plus prejudgment interest at the annual rate of 9% pursuant to CPLR § 5001.

## COUNT III
### ACCOUNTING

57. Plaintiff repeats and realleges all the foregoing paragraphs as though fully set forth herein.

58. At all relevant times, Defendants were in a fiduciary relationship with Plaintiff.

59. Such fiduciary relationship was created when Plaintiff entrusted to Defendants

Plaintiff's monies for lending purposes in connection with the Hoboken and Elizabeth properties and their loans agreements.

60. As such, Defendants are bound to reveal their dealings to Plaintiff with respect to its monies used in connection with the Hoboken and Elizabeth New Jersey properties and loans.

61. Specifically as to the Hoboken New Jersey property loan, Defendants have represented the existence of and yet have failed to account for a $2,000,000.00 credit due and owing from certain insurance related litigation.

62. Plaintiff has sought an accounting regarding these properties and loans.

63. To date, Defendants have failed to provide full and adequate accounting with respect to these properties and loans.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that judgment be granted awarding Plaintiff:

1. Damages in the amount of one million eight hundred thousand dollars ($1,800,000.00) on the Elizabeth New Jersey loan;
2. An unspecified amount of damages to be determined at trial with respect to the Hoboken New Jersey loan;
3. Statutory prejudgment interest at the rate of nine percent (9%) for monies owed with respect to both the Hoboken and Elizabeth New Jersey loans;
4. A full accounting of Plaintiff's interests with respect to both the Hoboken and Elizabeth New Jersey loans; and
5. Such other and further relief as the Court deems just and proper.

/

/

Dated: New York, New York
       June 1, 2017

WOODS LONERGAN & READ PLLC

/s/ James F. Woods

James F. Woods, Esq. (JW3211)
Annie E. Causey, Esq. (AC5795)
280 Madison Avenue, Suite 300
New York, New York 10016
Tel: (212) 684-2500
jwoods@woodslaw.com
acausey@woodslaw.com

*Attorneys for Plaintiff Finance Investments Overseas Holding Corp.*